for ordinance not to exceed 15 minutes or five. Ms. Sukmanan, will you call the roll? Good morning, Your Honors. May it please the Court, Sparkle Sukmanan for Petitioner Bartolo Fitchett. Your Honors, the State Court's rejection of Mr. Fitchett's failure to investigate claim is objectively unreasonable because counsel failed to investigate known witnesses who could help establish his client's innocence, and it is reasonably likely that that missing testimony would have changed the result of Mr. Fitchett's trial. Ms. Court has held that an attorney has a duty to investigate all witnesses who may have information about his client's innocence. Counsel here failed to investigate two witnesses, Ms. Dawkins and Mr. Oviedo, and this is despite being told by his client that both witnesses could provide testimony helpful to the defense. If I may briefly talk about the facts of this case that were presented at trial. This case was a he-said-he-said case. There was conflicting testimony. The State's two witnesses, Mr. Esposa and Mr. Gorsuch, testified that my client, Mr. Fitchett, got out of his truck, shot Mr. Esposa, and that bullet grazed him, and then magically exited through his T-shirt without leaving any hole in that shirt, and then left five or six separate holes in his coat. Not a single witness testified that they saw this alleged shooting or even heard a gunshot, notwithstanding the fact that, by all accounts, this occurred in daylight in a populated area. My client testified, as he had from the beginning of this case, that he did not shoot Mr. Esposa, that he didn't even have a gun. He testified that he got out of his truck because the men flagged him down. They asked him for money, then attempted to rob him. Mr. Esposa, who had gotten off a roofing job, stabbed my client with a screwdriver, nicked him, and he defended himself with his walking cane and escaped. Now, prior to trial, he told his attorney that two witnesses could help corroborate his side of the story versus the story presented by Mr. Esposa and Mr. Gorsuch. Ms. Dawkins could testify that she treated that wound that Mr. Esposa inflicted with the screwdriver. Her testimony was crucial because in Mr. Esposa and Mr. Gorsuch's... No injury or nothing as to his coat that would show no injury? As to my client, Your Honor? As to someone, certainly the stabbing wound. Who was stabbed? So my client was with Mr. Esposa, stabbed my client with a screwdriver. At the time of trial, which was in February of 2007, there was no visible wound on my client because by that time, the wound when he was nicked with the screwdriver was healed. And so at the time... No scar or anything, is that true? Correct. And so that's why Ms. Dawkins' testimony was crucial here because she could establish that he was injured because she dressed his wound. And if, in fact, the jury believed her, they could not have found him guilty because according to Mr. Esposa and Mr. Gorsuch, they had no screwdriver and my client was never injured. Your theory of the case, I gather, is that there are two stories here and there's no third middle story that's at issue. It's either story one or story two. Yes, Your Honor. So any evidence that strongly supports your story correspondingly undermines the other story. Yes. Let me ask you what my particular question is about this case because I can sort of see how a jury might have wanted to know if there had been a screwdriver wound. That would have supported your story, right? But our court has been reminded repeatedly to be careful when we have cases under AEDPA. You may be aware of that, right? Yes, absolutely. So we have to be very careful not to overturn state court decisions contrary to the deference that AEDPA applies. So I'm looking at the state court judgment that I guess is the judgment, is the opinion that gets AEDPA deference. Yes, the decision on that. And that's this trial court on collateral review decision, right? Yes. And it says, and I'm talking particularly about Dawkin. Okay. So I think it's the stronger, if not the only thing, that really arguably would support one of the stories over the other. Are you with me? Yes. All right. The defendant contends that his attorney should have called his fiancee Dawkin. He suggests that she had relevant testimony, but it's vague and not specific as to what the testimony would have been. Since defendant has not adequately briefed this point, the court treats it as abandoned. You know, there's different prongs of AEDPA, but as I take it, simplified, we just have to see whether that's reasonable. Correct. If that's reasonable, you lose, right, even if all this other stuff might have persuaded someone else, right? So that takes me back to what they argued. They're basically saying you didn't provide us with anything except vaguenesses, right? So what did they provide them with? Well, it wasn't much. It's just this one little paragraph on page 25 of their motion, unless there's something else that you can point me to. Your Honor. And it just says she had firsthand knowledge, could have cast a more favorable light.  Three sentences, all right? This is a state court saying three sentences in your brief are insufficient. We have to say that their statement that these three sentences in their brief was insufficient was irrational. That's tough, isn't it? It doesn't sound irrational. It sounds like they looked at these three sentences and saw that they weren't very much and said, you haven't given us enough to go on. How is that unreasonable? Your Honor, it's absolutely not. I'm asking the right question? Absolutely, Your Honor. How is that unreasonable? It is objectively unreasonable because what the state court found was that Mr. Fitchett's allegations were vague and nonspecific. And Mr. Fitchett alleged that Ms. Dawkin was there. She cleaned and dressed his wound after he was stabbed. That is not at all vague or nonspecific, and it's objectively unreasonable to characterize those allegations as vague and nonspecific. That's basically your argument. On AEDPA, yes, Your Honor. The state court was absolutely— AEDPA is what we got. Yes. So it just comes down to whether we agree with you that it's—as to whether it's reasonable or not to say that this last—this one sentence is vague and nonspecific. Your Honor, Mr. Fitchett's allegation in his pro se brief was absolutely—it was not at all vague and nonspecific, and he made these allegations in his brief and requested an evidentiary hearing to establish those facts more clearly. The state court accepted his allegations as true. He requested a hearing at what stage? In the trial court, Your Honor, when he filed— In the same document that I was just reading from? Yes, Your Honor. It's on pages 463 and 464, page ID. Okay. And he—and in that motion for a hearing, he specifically referred to this claim. He said in paragraph 1 on page 463, trial attorney William White failed to investigate and use exculpatory witnesses at trial. And that was one of the bases for him asking for a hearing. The state court accepted his allegations, denied his request for a hearing, and then denied his claim. And that decision was absolutely, objectively unreasonable under AEDPA. Your Honor, the failure to investigate known witnesses could help establish your client's innocence is a textbook case of ineffective assistance, and that's what we have here. Mr. Fitchett's attorney did not put on a single witness on defense. All he had was his client get up there and tell his story. And in this story of two witnesses saying one thing and a criminal defendant on trial saying another, the jury believed the two witnesses. And if one or two other witnesses had corroborated Mr. Fitchett's story, it is reasonably likely that the jury would have believed him instead. I mean, you know, I hate to parse stuff too closely, but he doesn't really say in this paragraph that she would have said she dressed the wound. It says she had knowledge of the background. And her testimony would have cast it in a more favorable light. And then it just says who she is. She's the person who was present. Your Honor, it says Ms. Dawkins had firsthand knowledge of the background between the victim and the defendant. Her testimony could have... That doesn't go to whether she dressed his wound. Correct. Her testimony could have cast a more favorable light on the defense theories. And then she was the person who was present after the defendant and the alleged victim had previously had an altercation. She cleaned and dressed the wound of the defendant, Bartolo Fitchett, after being stabbed by the alleged victim. Now, if Ms. Dawkins was the person who'd cleaned and dressed his wound and would testify to that at trial, that would absolutely change what was going on. I wouldn't say she would testify to that at trial, though. It just says that's how... I mean, it is parsing it sort of closely, but it does... It just says who she is. It doesn't say what she would say. Your Honor, but it does say what she experienced and that she cleaned and dressed his wound. And with that information, the attorney had the duty to talk to Ms. Dawkins and find out exactly what she would say, decide whether she would be a credible witness. And, I mean, he may have decided not to put her on for strategic reasons, but he had to at least talk to her and figure out if she could be helpful to this defense, particularly when he didn't put anyone else on. All he put on was his... It would seem like the collateral court, the collateral state court, is entitled to more explanation of what she would say than just she knew stuff, right? Your Honor, he did not just... I mean, you're saying that should have been done in a hearing, right? Yes, Your Honor. And if this court is concerned about more about what she would have testified to, it may remand the case at a minimum and ask the district court to conduct an evidentiary hearing once it gets past AEDPA on Dane Overview, and this court has the authority to do that. Mr. Fitchett's allegations, if true, would establish ineffective assistance. If his attorney did not contact these witnesses who could have helpful information, that's ineffective. And so at a minimum, this court should remand the case, instruct a district court to make factual findings as to that point because up until this point into the litigation, Mr. Fitchett has not had the opportunity to develop those facts, and his allegations, if true, which are not contradicted in the record in any way, would undoubtedly entitle him to habeas relief. If Your Honor has no more questions. Thank you. Thank you. Thank you. Good morning, Your Honors, and may it please the court. I'm Catherine Dalzell here on behalf of Respondent Appellee Mitchell Perry. The district court's denial of Mr. Fitchett's habeas petition was correct, and we ask that this court affirm it. Fitchett has a double burden here. First, under ordinary Strickland principles, the burden is on him to prove his ineffective assistance of counsel claim, and under Strickland he has the burden to show both deficient performance and prejudice. The Supreme Court in Burt v. Titlow made clear that the burden, quote, rests squarely on the defendant, end quote, and counsel is strongly presumed to have rendered reasonable professional judgment.  This is AEDPA deference because the state adjudicated his claim on the merits, and this court can only overturn the state ruling if it was so lacking in justification that there was an error beyond any possibility for fair-minded agreement, and that's under Richter. And Pinholster made clear that, again, the petitioner carries the burden of proof under AEDPA also. And for Strickland claims under AEDPA, there is a double deference. The question is not whether this court believes the state court's resolution of the Strickland claim was correct, but rather whether the determination was reasonable. And despite the burden being entirely on Fitchett's side, he asked this court for something remarkable, which is he asked this court to grant habeas relief on his failure to investigate claim based on nothing but his bare assertion that his attorney failed to investigate. This is remarkable. If he's right that his bare assertions are enough, it's hard to see how every prisoner would not get a new trial. But he's not right, and his attempts to flip the burden onto the state fail. The burden is and always has been on him to establish the factual basis for his claim, and he never has, not in state court and not now. As this court had pointed out, the question here is whether the state court's decision was reasonable, and it was. Mr. Fitchett presented to the state court, as support for his claim, an affidavit of inadmissible material that bore no relation to his allegations, in which he openly mischaracterized to the state court. He gave the state court no affidavit from the other witness, Josie Dawkins, regarding what her proposed testimony would be. Was that basically that he didn't provide an affidavit from her? That was one of the things that he did not provide to the state court. I gather you're agreeing that we are trying to figure out the reasonableness of this paragraph in the state court's opinion. That deals with Dawkins, right? Right, and Oviedo. I think their argument with respect, I don't know about my colleagues, but I think the argument with respect to Oviedo is weaker for them.  I'm trying to think in terms of what a jury would think. Someone says one of the parties is a liar. That's one thing, but when you have someone who personally can confirm some aspect of one of the two alternative stories, that would be something the jury would want to know, wouldn't you think? It could well be, however . . . That gets us to this paragraph, which deals with that testimony. The state court says it's totally vague and nonspecific, and your opposing counsel says that's just objectively not true. It's not totally vague and nonspecific. It's clear and specific. She cleaned and dressed a wound after being stabbed. If she cleaned and dressed a wound and they believe her when she says that, that's going to affect their analysis, isn't it? I would have a couple of responses to that. The first is that, as this court noted during the questioning of Mr. Fidget's counsel, he did not actually say what Ms. Dawkins would testify in his briefing. I understand that. It was pretty close. Nor did he say what he told his attorney regarding what she would testify. So he means to allege not only that this person would know, but that he told the attorney that this person knew that. There were several things that he should have alleged but didn't. And also, as a second response to your question, under AEDPA, this court can affirm the state court based on any reason that would support the decision, because the AEDPA deference goes to the decision of the court, not necessarily its particular reasoning. So even if this court were troubled by the state post-conviction court's reasoning with respect to Dawkins, which I would argue you should not be, but if you were, again, the state court decision, if there's any reasonable basis. That's sort of a side point in your favor, but I wonder if a counter-argument would be that what the collateral trial court did in this case was basically say that it had been defaulted. If they say it's been defaulted and we say, no, it hasn't been defaulted, then we wouldn't be bound by the AEDPA deference. Is that right? Is that right? Well, if it were procedurally defaulted and there were no merits adjudication, then correct. No AEDPA deference would apply. You could read it that way as well, couldn't you? Pardon me? It says defendant hasn't adequately briefed it and treats it as abandoned. Why isn't that a procedural default? It could be viewed as a default, but the court also did address it on the merits. And the language that you're citing ñ Where does he address it on the merits? Yes, I'll go through the language that you're citing and then the place where it makes clear that there's a merits determination. The part that you're looking at, I think ñ Next sentence. Is that it? Well, there's the totally vague and nonspecific part, which could be interpreted as a default. But then the court says, Fitchett fails to show that counsel was ineffective in failing to present the two potential witnesses he mentions. That's a merits finding. And then at the end of its opinion ñ You know, if you fail to show it because you abandon your claim, I'm not seeing why that's necessarily a merits determination. Why couldn't you fail to show it by not showing it at the proper procedural time? I mean, that would be a procedural default, right, and still be a failure? There is more language in the state collateral court's opinion. On the last page, it says the court finds no merit in any of defendant's arguments. So if he advanced that argument with respect to Dawkin, I mean, ADPA is a formidable barrier. And the state court made clear that it was rejecting all of his arguments on the merits. And even if this court thought there were no merits determination with respect to Dawkin, I mean, we would argue at best it's both merits and procedural default. But even if this court thought it was just a default, at no point has Mr. Fitchett shown cause or prejudice to excuse it. And I'll also note that Mr. Fitchett has never suggested that this was a procedural default. It's his position, too, that there is a merits determination for his claim. He, in his district court habeas petition, argued cause for his failure to raise the claim on direct review in state court. The argument isn't that there's cause for the procedural default. The argument is that they erred in finding that it was procedurally defaulted because they based it on the fact that it was totally vague when it wasn't totally vague, right? Pardon me? Could you repeat the question? I thought you were saying that the independent argument with respect to procedural default would be sufficient to dispose of this case because it was actually procedurally defaulted because there was no cause and prejudice. I thought that's what you were saying. I believe the point I'm trying to make is that even if this court looked at it as procedural default, he has never advanced any cause or prejudice to excuse the default. Right. The argument is not that there's an excuse for the default but that no default occurred, which is different from an excuse for the default, right? You're saying that my argument is that no default occurred? The argument that you're just making right now. Correct. Right, which you said there's no cause or prejudice. Correct. You would only get to cause or prejudice when there is otherwise a default, but their argument with respect to whether there's a default is there's no default in the first place. Correct, and that's my argument, too, that there's no default here. It's our argument that there was a default. The argument, I guess, that would be made, I'm not trying to make their arguments for them, but the argument that would be made is that this trial court said procedural default because of X, and you say, one, they didn't say that, and, B, if they did, it's excused. But if they did, it doesn't matter whether it's excused because their argument, if they did, if the court did make that argument, if that was the basis for the court's decision, then their argument is not that it wasn't excused but that it's a wrong determination. It's their determination and it's wrong. Are you with me? I'm not sure I quite follow. Maybe I'm not saying it very clearly. I'm vague and unspecific, who knows. No, and I apologize. To me, you could look at this case. I'm wondering why we can't, and I'm confident you have a good answer, but I want to hear what it is. The argument would be this is a decision in which the state collateral trial court said, in effect, this case is defaulted because of vagueness and nonspecificity. I can understand an answer to that, which is to say they didn't say that. They said something else. But if they did say that, you're saying it's excused. I'm saying if they did say that, we don't need to get to whether it's excused because their argument isn't that it's excused. Their argument is that they're wrong. It wasn't vague and unspecific. It was instead unvague and specific, right? And that question, if you're going that far, would not get epidefference, would it? Again, I fear I'm not answering your question. It's my understanding that even if there were a default here, Mr. Fitchett would then need to show cause and prejudice for the default. And I could be off base there, but that's my understanding. And I guess my argument is that he's never attempted to show cause for making an insufficient proffer. In other words, if his insufficient proffer to the state court regarding Ms. Dawkin were viewed as a default, you know, the court said we treat this as abandoned because it's vague and nonspecific. I would say that a minute ago too. I think their argument is not that there's cause, but that . . . But the state court was just wrong. The state court was wrong that it was objectively unreasonable to say that it was defaulted. And if it was objectively unreasonable to say that it was defaulted in the first place, then you would go to the merits issue or maybe the right to a hearing issue without the clause of it. But I guess that was my question. But you looked at it that way. Maybe you can't look at it that way because it's not really default language. Well, I guess what I would say then, and I'll get back to the argument on reasonableness, but because you're concerned about this potential default and it being an unreasonable decision, even if this court got to de novo review, Mr. Fitchett would lose on de novo review. There's no question that he hasn't established his ineffective assistance of counsel claim on this record. This court couldn't find ineffective assistance of counsel where we don't know what he told his attorney regarding the witnesses. He mentions a letter that he gave his attorney allegedly in his reply brief. I have never seen a copy of that letter. To my knowledge, it's not part of the record. We don't know from the witnesses themselves what their testimony would have been, and we have no idea what his attorney did or did not do to investigate these witnesses or what the attorney's reasons might have been for whatever action he pursued. And Fitchett certainly made no statement of personal knowledge in his state court briefing that his attorney failed to investigate. What would keep him from arguing then that he wanted to have a hearing in order to do that? Well, Mr. Fitchett- All of those things, I guess. Correct. Mr. Fitchett has no claim here that the state court unconstitutionally denied him an evidentiary hearing. First, he forfeited any such argument because he's never argued that. He never argued it in the appeals of the state collateral ruling. He's never argued it to the district court, and there's no certificate of appealability on that question. And he's never advanced a federal claim based on a lack of an evidentiary hearing. He cites no case, let alone a Supreme Court case, that he has a federal constitutional right to a hearing, particularly under these circumstances where there's no clearly established law that a court must grant a hearing based on an inadequate and self-contradictory proffer that the petitioner openly mischaracterized. Courts have rejected arguments where petitioners such as Mr. Fitchett try to get around Ed Poddeference by saying, I didn't have an evidentiary hearing. In this court's decision in Ballinger v. Preleznik, for example, 2013 decision, the state court had denied an evidentiary hearing, and the district court below granted one and then granted the petition. But this court reversed, saying that the district court had violated Cullen v. Pinholster in granting an evidentiary hearing. And regardless, the state court's denial of his request for a hearing was reasonable, because his request was plainly deficient. And it certainly was not beyond fair-minded dispute that his request was deficient. She says it was contained in two pages. She says pages 463 to 464 in my excerpt only goes up to 462. But she says in those pages there was a request for a hearing. I can look it up. Why wasn't that sufficient? There was a request for a hearing in the- I thought you just said he never raised a hearing. He did not ask for a hearing on state direct review as he is required to pursuant to Michigan law. He had another ineffective assistance of counsel claim pertaining to things that he wanted his lawyer to ask the prosecution witnesses. That's a different claim than what is at issue here. So that is one thing I wanted to correct from Mr. Fitch's reply, is he did not ask for an evidentiary hearing pursuant to state law, because he didn't even ask for one on this claim until his collateral proceedings. He's actually fortunate that the state court did not enforce his default there. His proffer- He did on collateral. He raised this issue to the extent that he raised it. He raised it on collateral review and then asked for a hearing. Correct. It seems a little bit technical to say, well, he didn't provide enough proof when he asked for a hearing in order to provide the proof. But he still has to come forward with enough of a proffer to even warrant the district court granting him a hearing. As I think some of your questions suggested, his proffer in his state court briefing didn't even say what he told his attorney regarding the witnesses, as evidenced by the fact that he got an affidavit from Oviedo. He could have gotten an affidavit from Ms. Dawkins. He did not. He could have submitted his own affidavit saying what he told his attorney, what the witnesses told him. He did not. He could have tried to get an affidavit from his attorney. He did not. And he openly mischaracterized Oviedo's affidavit to the state court. And he also presented no evidence other than his own speculation regarding what his attorney did or did not do. And under those circumstances, it was certainly not unreasonable for the state court not to think a hearing was warranted. And on the topic of a hearing, one other correction to make is he asserts in his reply that pinholster does not preclude a hearing here, but it does. This court has clearly held in, again, it was the Ballinger v. Perleznick case, that where there is a merits adjudication, a hearing is precluded in federal court. In that case, the state court had denied an evidentiary hearing on an ineffectiveness claim, and it was a failure to investigate claim. The district court found the state court's denial of a hearing unreasonable and granted a federal hearing and then granted his petition. But this court reversed and said the district court violated pinholster. And of note, this court said, quote, while allowing a petitioner to supplement an otherwise sparse trial court record may be appealing, especially where he diligently sought to do so in state court, the plain language of pinholster in Harrington precludes it. So he is precluded from having a hearing here. Even if what the district court is considered to have done is procedural default? If where there's a merits adjudication, pinholster. So if there was a default, I believe that pinholster would not. But you're deciding wouldn't apply if we said that this was procedurally default, that what the collateral trial court did was procedurally default? Correct, if you went with the procedural default, which we would argue it was not, but yes. And I believe my time is up, but if the court has other questions. Thank you, counsel. Thank you. I would like to clarify a couple of points on rebuttal. First, as to the hearing, counsel's citations to Cullen and Ballinger in those cases are not applicable here. And Cullen does not restrict this court's ability to grant a hearing. The first step under 2254 D1, the question as to whether the state court's decision is unreasonable, that's when Cullen applies. If this court finds that it was unreasonable for the state court to hold that Mr. Fitchett's allegations to Ms. Dawkins, for example, were vague and nonspecific, Mr. Fitchett, and it finds prejudice, Mr. Fitchett gets passed 2254 D1, and as the Supreme Court has explained in, for example, Panetti v. Quarterman, once you're passed 2254 D1, this court must conduct a Danova review. And under Danova review, this court is free to instruct a district court to grant an evidentiary hearing because 2254 D1 no longer applies. Cullen only applies when we're on 2254 D1 land. And we've cited cases in our brief where this court has done exactly that, found that the petitioner satisfied 2254 D1, and on Danova review, grant an evidentiary hearing. What's your view as to whether it's permissible or reasonable or proper or whatever to read this paragraph as a procedural default holding? Your Honor, if this court may, neither party has had raised it up until this point. This court may, sua sponte, raise the issue, I believe. And if this court finds that that sentence, as to Ms. Dawkins, is akin to a procedural default, we would argue that there is no procedural default. It's wrong. This court has said— —for the same reasons, correct? Correct. Yeah, as to—the Supreme Court and this court has held that— If we were to agree with you at that far, then what would the result be, that we had Danova review or that we should have a hearing or we should order a hearing or what? On Danova review, this court may grant relief based on his allegations or it may order a hearing. I just want to be clear that this court absolutely has the ability to grant an evidentiary hearing to Mr. Fitchett. Cullen does not apply if you're not in 2254 D1. And 2254 E2 does not bar this court's review because Mr. Fitchett, who's a pro se prisoner, made allegations, requested a hearing in state court. And the issue is not, as my colleague raised it, whether Mr. Fitchett has a constitutional right to a hearing. That is not the question. The question is, on Danova review, if he has alleged facts that, if true, would entitle him to relief, the district court has the discretion to grant a hearing. And as a pro se prisoner who alleged facts that, I would argue, if true, absolutely entitle him to relief, at a minimum— Why doesn't—I mean, you're opposing counsel. I think I understand your arguments, but your opposing counsel points out that there's no indication of what he told the attorney, what the testimony would have been, why there's no affidavit, what the attorney should have done. You know, that's the kind of thing we normally see. It's just almost a throwaway sentence. It does look like some objective observers would say that the collateral court's opinion is not unreasonable. No, Your Honor. We're dealing with a pro se prisoner who, from prison, submitted this petition, made allegations, and said at the beginning of that section of his brief, the defendant in this case had given trial counsel to exculpatory witnesses, and it goes on to say, at no time did trial counsel investigate these witnesses. He requested an evidentiary hearing in state court to prove those allegations. Through no fault of his own, he was not granted one. And at a minimum, on date of review, this court should instruct the district court to grant him a hearing and make those factual findings, an opportunity he has never been given. Thank you. The case will be submitted. You are appointed under the Criminal Justice Act, and we appreciate your service under the Criminal Justice Act. We appreciate the advocacy of both parties, and the case will be submitted.